UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>                  Plaintiff,<br><br>v.<br><br>PS TREE SERVICE, INC. and RONAN A. DE SOUZA,<br><br>                  Defendants. | Civil Action No. 1:21-cv-11179<br><br>July 20, 2021 |

### MEMORANDUM IN SUPPORT OF SECRETARY OF LABOR'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor (the "Secretary"), seeks immediately to restrain Defendants PS Tree Service, Inc. and Ronan A. De Souza (collectively, "Defendants"), from retaliating against employees who assert their rights under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA" or "Act").

The Wage and Hour Division of the United States Department of Labor initiated an investigation of Defendants' employment practices under the FLSA in 2021. On June 4, 2021, Daniel Chaves and Chaves's close relative, Andreia Skinner, provided to the Wage and Hour Division investigator statements concerning Chaves's work for Defendants as a minor employee. As a result of Chaves and Skinner's communications with the investigator, in late June 2021, Defendant De Souza sent threatening text messages to Chaves and Skinner, stating that they "both will pay" if they continue to participate in the Wage and Hour Division's investigation. Because of Defendant De Souza's text messages, Chaves and Skinner are afraid for their own safety and the security of their family members.

1

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Section 17 of the FLSA, 29 U.S.C. § 217, the Secretary seeks: (1) a temporary restraining order ("TRO"), to remain in effect until a hearing can be held, and (2) a preliminary injunction, to be issued after a hearing, each of which would restrain Defendants from continuing to violate Section 15(a)(3) of the Act, and require Defendants to provide notice to employees of their rights under the FLSA. A TRO and preliminary injunction are necessary and appropriate in this case because the Secretary is likely to succeed on the merits of his retaliation claim, the balance of equities and the public interest favor an injunction, and the Secretary and Chaves will suffer irreparable harm unless Defendants are enjoined from continuing to retaliate against current and former employees for engaging in protected activity.

## FACTUAL BACKGROUND

Daniel Chaves was an employee employed by Defendant PS Tree Service, Inc. ("PS Tree") from about March 2020 until about September 2020. Decl. of Marcelo M. Bini ¶ 6 (Exhibit A) ("Bini Decl."). Defendant De Souza is the director and sole officer of PS Tree, and De Souza supervised Chaves while Chaves was employed at PS Tree. *Id.* ¶ 8. Although Chaves is now 18 years old, Chaves was a minor throughout the entire period that Chaves worked for PS Tree and Defendant De Souza. *See id.* ¶ 7. Andreia Skinner is Chaves's aunt and served as Chaves's legal guardian until the time Chaves reached the age of majority. *Id.* ¶ 13. Chaves still resides with Skinner. *See id.*

When Chaves began working at PS Tree, Chaves earned $14.00 per hour. *Id.* ¶ 10. Chaves's hourly rate increased to $15.00 per hour in or around July 2020. *Id.* Chaves typically worked from 7:00 a.m. to approximately 6:00 p.m. on weekdays during the summer months and sometimes worked until 8:00 p.m. or 9:00 p.m. *Id.* ¶ 9. Chaves also worked on two Saturdays

each month. *Id.* Even though Chaves was a minor at the time, Chaves routinely operated a wood chipper and chainsaw while working for Defendants, *see id.* ¶ 12, in violation of the FLSA's child labor provisions and their implementing regulations. In addition, neither PS Tree nor Defendant De Souza paid Chaves the overtime premium required by the FLSA for weeks in which Chaves worked more than 40 hours. *Id.* ¶ 11. Defendants always paid Chaves at Chaves's straight-time rate and never at one and one-half times Chaves's regular rate of pay for overtime hours worked. *Id.*

The Boston District Office of the Wage and Hour Division began an investigation of PS Tree in 2021. *Id.* ¶ 4. As part of that investigation, on or about June 4, 2021, Chaves and Skinner provided to the Wage and Hour Division investigator statements concerning Chaves's work at PS Tree. *See id.* ¶ 13. Soon after, on or about June 27, 2021, Defendant De Souza sent Chaves intimidating messages concerning the investigation through the WhatsApp text messaging application. *See id.* ¶ 14. In those text messages Defendant De Souza expressed a belief that Skinner had complained about Defendants' employment practices, writing to Chaves: "She was the one who made the complaint about the company, I already found out. . . . Your aunt Andreia." *Id.* Defendant De Souza then gave Chaves an ominous instruction: "Just tell [Andreia] to relax because she runs much more risk than I do ok." *Id.*

Defendant De Souza's threats did not stop there. On or about June 28, 2021, Defendant De Souza also texted threats to Skinner. *See id.* ¶ 15. When Skinner stated that Skinner intended to look for a lawyer because of De Souza's threats, De Souza replied: "Go right now otherwise tomorrow will be too late." *Id.* Defendant De Souza proceeded to send another alarming warning to Skinner concerning Chaves and Skinner's participation in the investigation: "So, keep things

to yourself otherwise you both will pay." *Id.* After receiving these messages, Skinner reported the threats to the police. *See id.* ¶ 16.

Chaves and Skinner fear for their safety and their family's safety because of Defendant De Souza's messages. *See id.* ¶ 18. Skinner believes that Defendant De Souza has threatened at least one other member of their family. *See id.* ¶ 17. Moreover, their worries are exacerbated by previous incidents in the winter of 2020, when Defendant De Souza drove to their house without any invitation and parked outside. *See id.* ¶ 18.

## LEGAL STANDARD

A TRO or preliminary injunction should be awarded under Rule 65 of the Federal Rules of Civil Procedure when a plaintiff demonstrates "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Norris on behalf of A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 22 (1st Cir. 2020). Of the four factors that the trial court must consider, the United States Court of Appeals for the First Circuit has instructed that the movant's likelihood of success on the merits is the most important in the analysis. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996) ("Likelihood of success is the main bearing wall of the four-factor framework.").

## ARGUMENT

Defendants' concerning retaliatory threats against Chaves and Chaves's family require the remedy of preliminary injunctive relief. This Court should, therefore, immediately enter an order restraining Defendants and their agents from violating Section 15(a)(3) of the Act and requiring Defendants to give employees notice of their rights under the FLSA.

I.      The Secretary Is Likely to Succeed on the Merits of the Retaliation Claim

Section 15(a)(3) of the FLSA prohibits "any person" from, among other things, "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee . . . has testified or is about to testify in any . . . proceeding" under the Act. 29 U.S.C. § 215(a)(3).[1] To prevail on an FLSA retaliation claim, the Secretary must show that: (1) an employee engaged in statutorily protected activity; (2) the employer or its agent subjected that employee to an adverse action; and (3) that adverse action was because of the employee's protected activity. *See Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 531 (1st Cir. 2015); *Blackie v. State of Me.*, 75 F.3d 716, 722 (1st Cir. 1996). The Secretary can establish these three elements and is likely to succeed on the merits of this claim.

    A.    *Chaves's Protected Activity*

An employee who "has testified or is about to testify in any . . . proceeding" under the FLSA is expressly protected from retaliation because of that testimony. 29 U.S.C. § 215(a)(3). The scope of this clause protects employees who participate in an investigation by the Secretary or who have communicated or are about to communicate with the Secretary concerning the FLSA. *See Scalia v. F.W. Webb Co.*, No. 20-cv-11450-ADB, 2021 WL 1565508, at *4 (D. Mass. Apr. 21, 2021) (Burroughs, J.) (concluding that the Secretary plausibly alleged protected activity element where the Secretary asserted that employees "had spoken or were about to speak to" investigators during an FLSA investigation); *Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d

---

[1] Within this context, the term "employee" covers both current and former employees, granting workers protection from discrimination during and after their employment. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008); *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 147 (6th Cir. 1977); *see also Robinson v. Shell Co.*, 519 U.S. 337, 346 (1997) (holding that former employees are protected by the anti-retaliation provision of Title VII of the Civil Rights Act of 1964 ("Title VII")).

1234, 1249 (D. Or. 2014) ("[E]mployees who provide statements to the Department of Labor's investigator are engaging in protected conduct under the statute."); *see also Miller v. Metro Ford Auto. Sales, Inc.*, 519 F. App'x 850, 851 (5th Cir. 2013) (per curiam) (unpublished) ("The ADEA and FLSA prohibit employers from discriminating against any employee for . . . participating in investigations or other proceedings."); *Scalia v. Unforgettable Coatings, Inc.*, 455 F. Supp. 3d 987, 991 (D. Nev. 2020) ("The FLSA expressly prohibits retaliation against any employee for cooperating with an investigation under the FLSA.").

Here, Chaves undoubtedly engaged in activity protected under Section 15(a)(3) of the FLSA. In 2021, the Wage and Hour Division began an investigation of PS Tree's compliance with the FLSA, including the Act's provisions related to overtime and child labor. *See* Bini Decl. ¶ 4. As part of that investigation, on or about June 4, 2021, Chaves provided to a Wage and Hour Division investigator a statement concerning Chaves's employment with Defendants. *See id.* ¶ 13. Chaves had been a minor during the period covered by the investigation, and Chaves's aunt and former legal guardian, Skinner, also provided a statement and participated in the investigation. *See id.* Chaves's communication with a Wage and Hour Division investigator in early June 2021 during an active Wage and Hour Division investigation fits squarely within the conduct protected by Section 15(a)(3) of the FLSA.

  B.  *Defendants' Adverse Actions*

An adverse action is one that might dissuade a reasonable worker from making or supporting a charge of an FLSA violation. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (decided in the context of Title VII); *F.W. Webb Co.*, 2021 WL 1565508, at

\*4 (applying *Burlington Northern* adverse action standard in FLSA retaliation case).[2] That is to say, the "challenged action" must be "materially adverse," *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68, as judged by a case-by-case inquiry "cast in objective terms," *Blackie*, 75 F.3d at 725. An adverse action need not be related to the worker's job and need not occur in the workplace. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 63 ("An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace.").

After Chaves's statement to the Wage and Hour Division investigator, Defendants took adverse actions against Chaves by sending intimidating messages to both Chaves and Skinner. First, Defendant De Souza directly sent Chaves a foreboding text, which said: "Just tell [Skinner] to relax because she runs much more risk than I do ok." Bini Decl. ¶ 14. Then, Defendant De Souza began to text Chaves's aunt, Skinner, and warned that if Skinner did not immediately find

---

[2] While *Burlington Northern* is a case interpreting Title VII, Judge Burroughs recently decided that the *Burlington Northern* standard for adverse action also is applicable to retaliation claims under Section 15(a)(3) of the FLSA. *See F.W. Webb Co.*, 2021 WL 1565508, at \*4. The *F.W. Webb* case is the key decision on this question in this jurisdiction, as the First Circuit has not had occasion to consider the adverse action standard in an FLSA case since the Supreme Court decided *Burlington Northern* in 2006. *See Travers*, 808 F.3d at 531 (no dispute that employer engaged in adverse action); *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 430–31 (1st Cir. 2010) (affirming dismissal of Section 15(a)(3) claim based on failure to allege any protected activity and not analyzing adverse action under the FLSA). Six other United States Courts of Appeal have expressly relied on the adverse action standard from *Burlington Northern* in Section 15(a)(3) cases. *See Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 648 (11th Cir. 2019); *McBurnie v. City of Prescott*, 511 F. App'x 624, 625 (9th Cir. 2013) (unpublished); *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 531–32 (6th Cir. 2011) (unpublished); *Noack v. YMCA of Greater Houston Area*, 418 F. App'x 347, 353 (5th Cir. 2011) (unpublished); *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *Darveau*, 515 F.3d at 343. Moreover, the First Circuit has stated that Title VII decisions should guide the interpretation of analogous provisions of the FLSA. *See Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. 1997) ("We regard Title VII . . . and [the] FLSA as standing *in pari passu* and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another."). This clear instruction from the First Circuit in part guided Judge Burroughs's decision in *F.W. Webb*. *See* 2021 WL 1565508, at \*4.

a lawyer to address Defendant De Souza's threats, "tomorrow will be too late." *Id.* ¶ 15. Defendant De Souza followed up with a threat directed at both Chaves and Skinner: "So, keep things to yourself otherwise you both will pay." *Id.* Defendant De Souza's messages came through loud and clear: if Chaves and Skinner continued to participate in the Wage and Hour Division investigation, something bad would happen to them.

These "warnings" of possible harm directed at an employee are precisely the type of intimidation that constitutes a materially adverse action. *See Ford v. Alfaro*, 785 F.2d 835, 841–42 (9th Cir. 1986) (finding that retaliatory threats of bodily harm violate Section 15(a)(3)); *Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d at 1248 (noting that employer's "threats of physical violence did not need to be actionable to suggest that cooperating with the Department of Labor's investigation would result in negative consequences of some sort"); *see also Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67 (recognizing that adverse action can occur outside the workplace). Courts also have acknowledged that ominous threats against the safety and security of a worker's close relatives, like Skinner, can constitute adverse actions under the FLSA. *See Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 649 (11th Cir. 2019) (recognizing that, in the Section 15(a)(3) context, "employers' adverse actions against third parties," including close family members, "may also qualify as actionable retaliation"); *Aponte v. Modern Furniture Mfg. Co.*, No. 14-CV-4813, 2016 WL 5372799, at *18 (E.D.N.Y. Sept. 26, 2016) (stating that plaintiff met *prima facie* burden for retaliation claim based on employer's threats to report plaintiff and plaintiff's son to immigration authorities); *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174–75 (2011) (concluding that adverse actions against closely related third parties can constitute cognizable retaliation under Title VII).

C.  *There is a Causal Connection Between the Protected Activity and Defendants' Adverse Actions*

For the third element of his retaliation claim, the Secretary "must proffer evidence from which a reasonable factfinder could infer that the employer retaliated against [the employee] for engaging in the protected activity." *Blackie*, 75 F.3d at 723. The precise standard of causation governing an FLSA retaliation claim in the First Circuit is not entirely clear. In 2002, the First Circuit applied a "but-for" standard of causation in a Section 15(a)(3) case. *See Kearney v. Town of Wareham*, 316 F.3d 18, 23–24 (1st Cir. 2002). However, years later in 2015, the First Circuit stated that it "need not decide the precise standard of causation that a plaintiff must meet to prove unlawful retaliation" under Section 15(a)(3) of the FLSA, as the parties apparently agreed that the "but-for" causation standard applied. *Travers*, 808 F.3d at 531. Assuming, without conceding, that the "but-for" standard of causation governs a Section 15(a)(3) claim, the Secretary can satisfy that standard here.

The text and context of Defendant De Souza's messages reveal that De Souza sent them in direct response to Chaves and Chaves's former guardian providing information to the Wage and Hour Division as part of the agency's investigation into Defendants. The messages, sent during the investigation, include clear threats to Chaves and Skinner: "keep things to yourself otherwise you both will pay" and "tell [Skinner] to relax because she runs much more risk than I do ok." Bini Decl. ¶¶ 14–15. Moreover, in one text, Defendant De Souza articulated to Chaves a belief that Skinner had "made the complaint about the company." *Id.* ¶ 14. The short time period between Chaves and Skinner's statements to the Wage and Hour Division and Defendant De Souza's threats, plus Defendant De Souza's asserted awareness of Skinner's role in the investigation, reveal that Defendant De Souza sent the messages because Chaves and Skinner had participated in the investigation. *See F.W. Webb Co.*, 2021 WL 1565508, at *5 (finding

9

causation plausibly alleged where, during investigation, employer sent employees emails that acknowledged the investigation, past testimony, and potential future testimony); *see also Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 49 (1st Cir. 2010) (stating that, in the Title VII retaliation context, a "showing of temporal proximity is sufficient to establish a prima facie case of causation"); *Joyce v. Upper Crust, LLC*, No. 10-12204-DJC, 2015 WL 4480751, at *5 (D. Mass. July 21, 2015) (Casper, J.) (denying employer's motion for summary judgment where employer's abusive treatment of employee began within months after employee informed the Secretary of possible FLSA violations); *cf. Reich v. Cambridgeport Air Sys.*, 26 F.3d 1187, 1189 (1st Cir. 1994) (affirming district court's decision in favor of Secretary in retaliation case under Occupational Safety and Health Act, and recognizing that employee had experienced retaliation because of close friend's protected activity).

****

Given that the Secretary is very likely to be able to establish each element of a Section 15(a)(3) retaliation claim, the Secretary is likely to succeed on the merits of that claim.

II.   <u>Chaves and the Secretary Will Suffer Irreparable Harm Unless the Court Issues an Order Restraining Defendants' Retaliation</u>

Retaliatory conduct that tends to deter employees from asserting their rights can constitute irreparable harm for purposes of preliminary injunctive relief. *See Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010); *Holt v. Continental Grp., Inc.*, 708 F.2d 87, 91 (2d Cir. 1983); *Unforgettable Coatings, Inc.*, 455 F. Supp. 3d at 992; *see also DeNovellis v. Shalala*, 135 F.3d 58, 64–65 (1st Cir. 1998) (affirming denial of preliminary injunction based on specific facts of the case, but recognizing that "chilling effect" can cause irreparable injury). Similarly, "[u]nchecked retaliation subverts the purpose of the FLSA and the resulting weakened enforcement of federal law can *itself* be irreparable harm" where there is "some evidence of

actual chill that would be cured by the requested injunction." *Mullins*, 626 F.3d at 55 (internal quotation marks omitted) (emphasis in original).

There is ample evidence that Chaves will continue to suffer irreparable harm if Defendants are not immediately restrained from engaging in further retaliation. Defendants have threatened Chaves and Chaves's family because of Chaves's participation in the Secretary's investigation by sending messages warning of ominous consequences if Chaves continues to speak with the Wage and Hour Division investigator. *See* Bini Decl. ¶¶ 14–15. Now, Chaves and Chaves's aunt, who shares a house with Chaves, feel unsafe and afraid for their family—feelings that are intensified by prior threatening episodes in which De Souza parked outside of their home. *See id.* ¶¶ 17–18. Thus, without an immediate order enjoining Defendants from taking further retaliatory action, there is a serious risk that Defendants' intimidating texts will deter Chaves from continuing to assert Chaves's rights under the FLSA. *See Mullins*, 626 F.3d at 55 ("We have held that the 'risk' of deterrence is sufficient to satisfy the irreparable harm standard."). Alternatively, if Chaves chooses to continue participating in the Wage and Hour Division's investigation, absent immediate injunctive relief Defendants may act on their chilling threat to make Chaves and Skinner "pay." Bini Decl. ¶ 15.

The Secretary also will face irreparable harm in the absence of a TRO and preliminary injunction. The Secretary is authorized to investigate potential violations of the FLSA's provisions, including those related to child labor and payment of the overtime premium, *see* 29 U.S.C. § 211(a), and to enforce the Act in court, *see id.* §§ 216(c), 217. To effectively investigate possible violations of and enforce the FLSA, the Secretary depends on workers feeling able to speak freely with his representatives. *See Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960) ("Plainly, effective enforcement [of the FLSA] could . . . only be expected if

employees felt free to approach officials with their grievances."). If Defendants continue discouraging employees from speaking with investigators or providing statements, *see* Bini Decl. ¶¶ 14–15, the Secretary's efforts to investigate and enforce the FLSA will be considerably undermined, *see Mullins*, 626 F.3d at 55 (recognizing that weakened enforcement of federal law can constitute irreparable harm); *Unforgettable Coatings, Inc.*, 255 F. Supp. 3d at 992 ("Should Defendants' threats, intimidation tactics, and retaliatory conduct continue, [the Secretary] will not be able to adequately investigate the alleged misconduct and will likely suffer irreparable injury as a result.").

Finally, because "there is a strong public interest in favor of enforcement of the FLSA," *Unforgettable Coatings, Inc.*, 255 F. Supp. 3d at 992, for the protection of both workers and law-abiding employers, the public also would be irreparably harmed if Defendants' retaliation remains unchecked.

III.  The Balance of Equities Favors and the Public Interest Would Be Served By an Injunction

The Court finishes its analysis by balancing "the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and . . . the effect (if any) of the court's ruling on the public interest." *Ross-Simons of Warwick, Inc.*, 102 F.3d at 15. Chaves, the Secretary, and the public would suffer the substantial, ongoing irreparable harms detailed above if no TRO or preliminary injunction issues. The only possible hardship Defendants might face if they are restrained from violating Section 15(a)(3) of the FLSA is that they will no longer be able to discourage current or former employees from speaking to the Secretary's representatives about possible unlawful employment practices. In short, Defendants have no

legitimate interest in continuing to threaten, harass, or intimidate employees who seek to assert their rights under the FLSA.

The public, on the other hand, has a powerful interest in ensuring that workers are free to report possible violations of the FLSA so that, through enforcement, the Secretary can improve working conditions and seek to eliminate competitive advantages for employers who underpay workers. *See* 29 U.S.C. § 202(a); *Unforgettable Coatings, Inc.*, 455 F. Supp. 3d at 992; *see also Marshall v. Chala Enters., Inc.*, 645 F.2d 799, 804 (9th Cir. 1981) ("[T]he Secretary seeks to vindicate a public, and not a private, right."). Injunctive relief restraining retaliation against employees is a crucial mechanism for ensuring compliance with the rest of the Act and serving the public's interest in fair wages and fair competition. *See Robert DeMario Jewelry, Inc.*, 361 U.S. at 292 ("By the proscription of retaliatory acts set forth in [Section] 15(a)(3), and its enforcement in equity by the Secretary pursuant to [Section] 17, Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced."). The balance of equities and the public interest, therefore, strongly favor a TRO and preliminary injunction in this case.

## CONCLUSION

Based on the foregoing, immediate injunctive relief is necessary and appropriate to protect Chaves and Chaves's family, as well as the Secretary's interests and the public interest. Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Section 17 of the FLSA, 29 U.S.C. § 217, the Secretary therefore respectfully requests from this Court a temporary restraining order to issue immediately and a preliminary injunction to issue after a hearing:

1. Enjoining and restraining Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with Defendants, from violating the provisions of Section 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3), by retaliating, taking any adverse action, or threatening to take any adverse action against any current or former

employee or their families because that employee or former employee asserted their rights under the FLSA;

2. Requiring Defendants to permit a representative of the Secretary to read aloud to all Defendants' employees, during employees' paid working hours, the statement attached to the Secretary's motion as Exhibit B, informing the employees of their right to speak with representatives of the Secretary and to file complaints regarding possible wage and hour violations, free from retaliation or threats of retaliation or intimidation by Defendants or their agents;

3. Requiring Defendants to post at each worksite a copy of the statement attached as Exhibit B in English, Portuguese, Spanish, and any other language that may be necessary for workers to effectively understand the statement, and provide each worker with a copy of the written statement in English, Portuguese, Spanish, and any other language that may be necessary for workers to effectively understand the statement, with their next paycheck;

4. Requiring Defendants to pay the Secretary's costs in bringing this motion; and

5. Ordering any other relief that the Court deems necessary and appropriate.

| | |
|---|---|
| Post Office Address: | Seema Nanda<br>Solicitor of Labor |
| U.S. Department of Labor<br>Office of the Solicitor<br>John F. Kennedy Federal Building<br>Room E-375<br>Boston, MA 02203<br>TEL: (617) 565-2500<br>FAX: (617) 565-2142 | Maia S. Fisher<br>Regional Solicitor<br><br>Mark A. Pedulla<br>Wage and Hour Counsel<br><br>/s/ Emily V. Wilkinson<br>Emily V. Wilkinson<br>Trial Attorney |
| Date: July 20, 2021 | wilkinson.emily.v@dol.gov<br>MA BBO No. 699512<br><br>U.S. Department of Labor<br>Attorneys for Plaintiff |

CERTIFICATE OF SERVICE

      I certify that, on July 20, 2021, I caused a copy of the Memorandum in Support of Secretary of Labor's Motion for a Temporary Restraining Order and Preliminary Injunction to be served by mail on Defendants at the following addresses:

    PS Tree Service, Inc.
    c/o Ronan A. De Souza, Registered Agent
    42 South Shore Rd.
    Holbrook, MA 02343

    Ronan A. De Souza
    42 South Shore Rd.
    Holbrook, MA 02343

                                            /s/ Emily V. Wilkinson
                                            Emily V. Wilkinson
                                            Trial Attorney